# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TENNESSEE
# EASTERN DIVISION

| | |
|---|---|
| RONNIE CLONE HENLEY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No: 1:14-cv-01204-STA-tmp |
| ) | |
| COMMISSIONER OF ) | |
| SOCIAL SECURITY, ) | |
| ) | |
| Defendant. ) | |

## ORDER AFFIRMING THE DECISION OF THE COMMISSIONER

Plaintiff Ronnie Clone Henley filed this action to obtain judicial review of Defendant Commissioner's final decision denying his application for disability insurance benefits under Title II of the Social Security Act ("Act"). Plaintiff's application was denied initially and upon reconsideration by the Social Security Administration. Plaintiff then requested a hearing before an administrative law judge ("ALJ"), which was held on January 30, 2013. On March 1, 2013, the ALJ issued a decision, finding that Plaintiff was not entitled to benefits. The Appeals Council denied Plaintiff's request for review, and, thus, the decision of the ALJ became the Commissioner's final decision. For the reasons set forth below, the decision of the Commissioner is **AFFIRMED**.

Under 42 U.S.C. § 405(g), a claimant may obtain judicial review of any final decision made by the Commissioner after a hearing to which he was a party. "The court shall have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the

cause for a rehearing."[1]  The Court's review is limited to determining whether there is substantial evidence to support the Commissioner's decision,[2] and whether the correct legal standards were applied.[3]

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[4] It is "more than a mere scintilla of evidence, but less than a preponderance."[5] The Commissioner, not the Court, is charged with the duty to weigh the evidence, to make credibility determinations and resolve material conflicts in the testimony, and to decide the case accordingly.[6]  When substantial evidence supports the Commissioner's determination, it is conclusive, even if substantial evidence also supports the opposite conclusion.[7]

Plaintiff was born on September 30, 1976.  He alleges that he became disabled on November 23, 2007, due to depression, anxiety, nervousness, trouble dealing with people, bipolar disorder, back pain, heart problems, and hypertension. He worked through a temporary agency at fast food places and at Wal-Mart, but none of his work was at the substantial gainful

---

[1] 42 U.S.C. § 405(g).

[2] *Id.*

[3] *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997).  *See also Landsaw v. Sec'y of Health & Human Servs*, 803 F.2d 211, 213 (6th Cir. 1986).

[4] *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001) (quoting *Richardson v. Perales*, 402 U.S. 389 (1971)).

[5] *Bell v. Comm'r of Soc. Sec.*, 105 F.3d 244, 245 (6th Cir. 1996) (citing *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).

[6] *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997); *Crum v. Sullivan*, 921 F.2d 642, 644 (6th Cir. 1990); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

[7] *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004); *Foster v. Halter*, 279 F.3d 348, 353 (6th Cir. 2001); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986).

activity level. Plaintiff dropped out of school during twelfth grade, eventually earning his diploma through a home study course in 2008.

The ALJ enumerated the following findings: (1) Plaintiff met the insured status requirements through December 31, 2012; (2) Plaintiff has not engaged in substantial gainful activity since the alleged onset date; (3) Plaintiff has the following severe impairments: mood disorder and personality disorder with dependent and avoidant traits; but he does not have impairments, either alone or in combination, that meet or equal the requirements of any listed impairment contained in 20 C.F.R. pt. 404, subpt. P, app. 1 of the listing of impairments; (4) Plaintiff retains the residual functional capacity to perform a full range of work at all exertional levels, but he is limited to simple, routine, one-to-two step instructions with occasional collaborative efforts in an environment with only occasional changes and with no exposure to the general public; (5) Plaintiff was a younger individual with a high school education equivalency on the alleged onset date; (6) transferability of job skills is not material to the determination of disability because Plaintiff has no past relevant work; (7) considering Plaintiff's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform; (9) Plaintiff was not under a disability as defined in the Act at any time through the date of this decision.[8]

The Social Security Act defines disability as the inability to engage in substantial gainful activity.[9] The claimant bears the ultimate burden of establishing an entitlement to benefits.[10] The initial burden of going forward is on the claimant to show that he is disabled from engaging in

---

[8] R. 14-22.

[9] 42 U.S.C. § 423(d)(1).

[10] *Born v. Sec'y of Health & Human Servs*, 923 F.2d 1168, 1173 (6th Cir. 1990).

his former employment; the burden of going forward then shifts to the Commissioner to demonstrate the existence of available employment compatible with the claimant's disability and background.[11]

The Commissioner conducts the following, five-step analysis to determine if an individual is disabled within the meaning of the Act:

1. An individual who is engaging in substantial gainful activity will not be found to be disabled regardless of medical findings.

2. An individual who does not have a severe impairment will not be found to be disabled.

3. A finding of disability will be made without consideration of vocational factors, if an individual is not working and is suffering from a severe impairment which meets the duration requirement and which meets or equals a listed impairment in Appendix 1 to Subpart P of the regulations.

4. An individual who can perform work that he has done in the past will not be found to be disabled.

5. If an individual cannot perform his or her past work, other factors including age, education, past work experience and residual functional capacity must be considered to determine if other work can be performed.[12]

Further review is not necessary if it is determined that an individual is not disabled at any point in this sequential analysis.[13] Here, the sequential analysis proceeded to the fifth step with a finding that, although Plaintiff has no relevant work, a substantial number of jobs exists in the national economy that he can perform.

---

[11] *Id.*

[12] *Willbanks v. Sec'y of Health & Human Servs*, 847 F.2d 301 (6th Cir. 1988).

[13] 20 C.F.R. § 404.1520(a).

Plaintiff argues that substantial evidence does not support the ALJ's findings. He specifically argues that the ALJ did not properly weigh the medical evidence in the record. Plaintiff's arguments are not persuasive.

Medical opinions are to be weighed by the process set forth in 20 C.F.R. § 404.1527(c). Generally, an opinion from a medical source who has examined a claimant is given more weight than that from a source who has not performed an examination,[14] and an opinion from a medical source who regularly treats the claimant is afforded more weight than that from a source who has examined the claimant but does not have an ongoing treatment relationship.[15] In other words, "[t]he regulations provide progressively more rigorous tests for weighing opinions as the ties between the source of the opinion and the individual become weaker."[16] Opinions from nontreating sources are not assessed for "controlling weight." Instead, these opinions are weighed based on specialization, consistency, supportability, and any other factors "which tend to support or contradict the opinion" may be considered in assessing any type of medical opinion.[17]

In contrast, it is well-established that the findings and opinions of treating physicians are entitled to substantial deference.[18] A treating physician's opinion is entitled to substantially

---

[14] 20 C.F.R. §§ 404.1502, 404.1527(c)(1).

[15] *Id.* §§ 404.1502, 404.1527(c)(2).

[16] Soc. Sec. Rul. No. 96–6p, 1996 WL 374180, at *2 (Soc. Sec. Admin. July 2, 1996).

[17] 20 C.F.R. § 404.1527(c).

[18] *See Walters*, 127 F.3d at 529–30; *see also Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985) (noting "[t]he medical opinions and diagnoses of treating physicians are generally accorded substantial deference, and if the opinions are uncontradicted, complete deference.").

greater weight than the contrary opinion of a non-examining medical advisor.[19] If a treating physician's "opinion on the issue(s) of the nature and severity of [a claimant's] impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case," the opinion is entitled to controlling weight.[20] Furthermore, "[i]f the ALJ does not accord controlling weight to a treating physician, the ALJ must still determine how much weight is appropriate by considering a number of factors, including the length of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and any specialization of the treating physician."[21]

Closely associated with the treating physician rule, "the regulations require the ALJ to 'always give good reasons in [the] notice of determination or decision for the weight' given to the claimant's treating source's opinion."[22] Moreover, "[t]hose good reasons must be 'supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.'"[23]

In the present case, Plaintiff contends that the ALJ erred by failing to discuss the opinions of Ilze Sillers, Ph.D., and Edward Stodola, Ph.D., failing to reconcile their opinions with Dr.

---

[19] *See Shelman v. Heckler*, 821 F.2d 316, 321 (6th Cir. 1987).

[20] 20 C.F.R. § 404.1527(d)(2); *see also Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009).

[21] *Blakley*, 581 F.3d at 406 (citation omitted.).

[22] *Id.* (citation omitted.).

[23] *Id.* (citation omitted.).

Wayne Edwards's opinion, and failing to evaluate the opinion of Raymond Tollette, L.M.S.W., as required by the regulations. To the contrary, the ALJ properly considered the medical opinion evidence and other evidence of record in making her determination.

The ALJ gave significant weight to the assessment of examining physician Dr. Edwards, as it was supported by findings upon psychological evaluation.[24] The ALJ also gave appropriate weight to the opinions of the non-examining medical consultants, Dr. Sillers and Dr. Stodola, who were licensed psychologists.[25] The ALJ gave no weight to Tollette's opinion.

Plaintiff contends that Dr. Edwards's finding that he could "occasionally collaborate with coworkers" is contradicted by the opinions of Dr. Sillers and Dr. Stodola, who both opined that Plaintiff would be unable to accommodate work that requires frequent interaction with others. The opinions of Dr. Sillers and Dr. Stodola that Plaintiff could work in a setting that does not require frequent interaction with others implies that Plaintiff would be able to tolerate occasional interaction with others; thus, there is no contradiction. The ALJ limited Plaintiff to occasional collaborative efforts and no exposure to the general public, which is in line with the opinions of all three medical experts.

Plaintiff also complains that the ALJ failed to consider the opinion of Tollette and failed to apply "all of the factors required by the regulations" in assessing that opinion. The ALJ gave Tollette's opinion no weight because it was not supported by his treatment notes and was inconsistent with the medical evidence when considered as a whole. The weighing of this opinion is supported by substantial evidence.

---

[24] R. 256-62.

[25] R. 270-88, 317-34.

A medical opinion is a statement from a physician, psychologist, or other acceptable medical source about the nature and severity of a claimant's impairments.[26] Tollette, a licensed social worker, is not an acceptable medical source and, thus, his opinion is not entitled to weight as such.[27] Because he is not an acceptable medical source, Tollette does not fall into the definition of "treating source" under the regulations.[28] Instead, Tollette is an "other source" as defined in 20 C.F.R. §§ 404.1513(d) and 416.913(d), and his opinion is evaluated under SSR 96-03p.

Tollette opined that Plaintiff had marked limitations in his ability to understand, remember, and carry out simple instructions, and extreme limitations with more complex instructions, but treatment records show that he was alert, oriented, and focused, with normal mental cognition.[29] Tollette also opined that Plaintiff had extreme limitations in his ability to interact appropriately with the public and supervisors and marked limitations in his ability to interact with coworkers. Although treatment notes show significant social anxiety and isolating behavior, they also consistently show that Plaintiff was pleasant, friendly, and cooperative, and, despite his anxiety, he was able to interact appropriately and get along with others.[30] Tollette

---

[26] *See* 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2).

[27] *See* 20 C.F.R. 404.1502, 404.1513(a), 416.902, 416.913(a).

[28] *See* 20 C.F.R. §§ 404.1502, 416.902.

[29] R. 292, 310, 376, 382-83, 385-86, 410.

[30] R. 258, 260-61, 303, 337, 339, 341, 367, 375, 385, 387, 392, 403.

stated that Plaintiff had "no social support beyond his aging parents."[31] But, Plaintiff reported that he had good and supportive friends and was able to get along with others.[32]

Even though Tollette opined that Plaintiff had marked to extreme limitation in all areas, he repeatedly encouraged Plaintiff to seek employment.[33] Plaintiff even acknowledged that he would be able to perform a cleaning job where he could work on his own and not be bothered by others.[34] Substantial evidence supports the ALJ's determination that, although Plaintiff suffers from depression and social anxiety, the record does not support the limitations described in Tollette's opinion.[35]

Although a physician's opinion about what a claimant can and cannot do is relevant evidence, that opinion is not determinative because the ALJ has the responsibility of assessing the claimant's residual functional capacity.[36] The responsibility for deciding issues such as whether the claimant's impairments meet or equal a listed impairment, the assessment of the claimant's residual functional capacity, and the application of vocational factors rests with the

---

[31] R. 410.

[32] R. 260, 388-99, 408.

[33] R. 372, 374, 378, 409-10.

[34] R. 378.

[35] *See e.g., Vance v. Comm'r of Soc. Sec.*, 260 F. App'x 801, 805 (6th Cir. 2008) ("However, . . . the ALJ here did not summarily dismiss the treating physicians' opinions; rather, the ALJ provided a lengthy, accurate, and thorough discussion of Vance's treating physicians' reports and findings."); *Stiltner v. Comm'r of Soc. Sec.*, 244 F. App'x 685, 690 (6th Cir. Aug. 7, 2007); ("The ALJ did not summarily dismiss Dr. Bansal's opinion. Rather, the ALJ detailed at substantial length why he found it lacking compared with the other evidence. This is all that we require when reviewing an administrative law judge's decision for compliance with 20 C.F.R. § 404.1527(d)(2)'s reasons-giving requirement.").

[36] *See* 20 C.F.R. §§ 404.1512(b)(2), 404.1513(b)(6), 404.1527(d)(2), 404.1545(a)(3), 404.1546(c); *Coldiron v. Comm'r of Soc. Sec.*, 391 F. App'x 435, 439 (6th Cir. 2012).

Commissioner.[37] Opinions on these issues "are not medical opinions . . . but are, instead, opinions on issues reserved for the Commissioner because they are administrative findings that are dispositive of a case; i.e., that would direct the determination or decision of disability."[38] "An ALJ does not improperly assume the role of a medical expert by weighing the medical and non-medical evidence before rendering an RFC finding."[39] Consequently, the ALJ in this case acted within her authority, and substantial evidence supports her decision.

Lending credence to the ALJ's decision is the objective evidence in the record. Findings upon physical examination were normal, and there is no indication that Plaintiff was ever hospitalized.[40] Although Plaintiff alleged significant limitations in his ability to walk due to back pain, he had no treatment for back pain, other than aspirin, and he told a social worker that he regularly took walks.[41] An ALJ may consider the disparity between Plaintiff's subjective claims of disabling limitations and the relatively modest clinical findings in assessing a claimant's credibility.[42]

Moreover, when Plaintiff was compliant with medication, his symptoms were relatively well-controlled.[43] Disability is not supported when an individual's impairments are improved

---

[37] *See* 20 C.F.R. § 404.1527(e).

[38] 20 C.F.R. § 404.1527(e); *see* SSR 96-5p, 1996 WL 374183 (1996).

[39] *Coldiron*, 391 F. App'x at 439; *Courter v. Comm'r of Soc. Sec.*, 479 F. App'x 713, 722 (6th Cir. May 7, 2012) (discounting claimant's assertion that ALJ overstepped authority in interpreting school records).

[40] R. 260-66, 335.

[41] R. 197, 360, 363, 368.

[42] *See Johnson v. Comm'r of Soc. Sec.*, 535 F. App'x 498, 506-07 (6th Cir. 2013).

[43] R. 297, 313, 337, 347, 366, 379, 397, 419.

with medications.[44] Finally, Plaintiff's activities of daily living were inconsistent with claims of disabling limitations.[45]

At step five, the Commissioner must identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity and vocational profile.[46] The Commissioner may carry this burden by applying the medical-vocational grids[47] which directs a conclusion of "disabled" or "not disabled" based on the claimant's age and education and on whether the claimant has transferable work skills.[48] However, if a claimant suffers from a limitation not accounted for by the grids, as in the present case, the Commissioner may use the grids as a framework for her decision but must rely on other evidence to carry her burden. In such a case, the testimony of a vocational expert may be used to find that the claimant possesses the capacity to perform other substantial gainful activity that exists in the national economy.[49]

Here, the ALJ relied on the testimony of a vocational expert in determining that there were significant numbers of jobs in the national economy that Plaintiff could perform.[50] The vocational expert's testimony was in response to a hypothetical question that set forth all the reasonable limitations Plaintiff had on his ability to work and, therefore, the ALJ properly relied

---

[44] *See Smith v. Comm'r of Soc. Sec. Admin.*, 564 F. App'x 758, 763 (6th Cir. 2014) (citing *Hardaway v. Sec'y of Health & Human Servs.*, 823 F.2d 922, 927 (6th Cir. 1987)).

[45] *See Temples v. Comm'r of Soc. Sec.*, 515 F. App'x 460, 462 (6th Cir. 2013) (discussing that daily activities are a proper factor for consideration in a credibility assessment).

[46] *Jones*, 336 F.3d at 474.

[47] 20 C.F.R. Pt. 404, Subpt. P, App. 2.

[48] *Wright v. Massanari*, 321 F.3d 611, 615 (6th Cir. 2003).

[49] *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 537 – 38 (6th Cir. 2001).

[50] R. 21.

on that testimony in her decision.[51] The vocational expert's testimony provided substantial evidence to support the ALJ's conclusion that Plaintiff could perform other work and was not disabled. Because substantial evidence supports the ALJ's findings and her conclusion that Plaintiff was not disabled within the meaning of the Act during the relevant period, the decision is **AFFIRMED**.

**IT IS SO ORDERED.**

s/ **S. Thomas Anderson**
S. THOMAS ANDERSON
CHIEF UNITED STATES DISTRICT JUDGE

Date: July 10, 2017.

---

[51] *See Foster*, 279 F.3d at 356-57.